## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES R. MELL,

        Petitioner,

                           CIVIL NO. 2:18-CV-11971

v.                               HONORABLE PAUL D. BORMAN

                           UNITED STATES DISTRICT COURT

GREGORY L. SKIPPER,

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING THE MOTION FOR AN EVIDENTIARY HEARING, (3) DENYING A CERTIFICATE OF APPEALABILITY, AND (4) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

      James R. Mell, ("Petitioner"), confined at the Michigan Reformatory in Ionia, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for armed robbery, Mich. Comp. Laws § 750.529; six counts of unauthorized use of a financial transaction device, Mich. Comp. Laws § 750.157n(1); and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

1

# I. BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, because they are presumed correct on habeas review. *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the armed robbery of 71–year–old Joyce Graham outside a Troy restaurant on the afternoon of January 9, 2013. As Graham walked to her car, a man wearing a black ski mask emerged from a vehicle, pointed a gun at her, and demanded her purse. Graham complied and the man drove away. Among other items, Graham's purse contained several credit cards, her cell phone, and car keys. Although the robber was wearing a ski mask, defendant's stature, race, and clothing were consistent with the robber's appearance, and the vehicle used during the offense was similar to a vehicle registered to defendant's fiancée, Louise Plewa. The police pinned Graham's cell phone in areas near the scene of the robbery, and, shortly after the robbery, defendant and Plewa were captured on surveillance video purchasing items with the stolen credit cards at different establishments. Graham's purse containing her wallet and keys, her eye glasses, property purchased with the stolen credit cards, a ski mask, and simulated guns were found in defendant and Plewa's home, which was a quarter mile from the restaurant where the armed robbery occurred. Graham's cell phone, two simulated guns, and receipts from establishments where the stolen credit cards were used were found in Plewa's vehicle, which defendant was driving when he was arrested. At trial, the defense admitted that defendant participated in using the stolen credit cards, but denied that he was the person who robbed Graham of her property. The defense theory was that defendant was misidentified as the robber and was unaware of how Plewa acquired the credit cards. The defense noted that, shortly after the robbery, the police investigated another white male, who was driving a similarly-described SUV with a similar license plate number.

*People v. Mell*, No. 316808, 2014 WL 6852989, p. 1 (Mich. Ct. App. Dec. 4, 2014).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 498 Mich. 872, 868 N.W. 2d 621 (2015); *reconsideration den.* 499 Mich. 859, 873 N.W. 2d 557 (2016).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Mell,* No. 13-244740-FC (Oakland Cty.Cir. Ct. Apr. 13, 2017). The Michigan appellate courts denied petitioner leave to appeal. *People v. Mell,* No. 340062 (Mich.Ct.App. Feb. 20, 2018); *lv. den.* 503 Mich. 886, 919 N.W.2d 47 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Categorically defining prosecutorial misconduct not only decimating rights guaranteed Petitioner by our United States Constitution's Fifth, Sixth, and Fourteenth Amendments, but so infecting the proceedings with unfairness as to result in a complete deprivation of due process, were trial errors stemming from government utilization of pervasive bad character attacks; post-*Miranda* and trial silence; a fictitious Confrontation Clause-violating accomplice confession; false evidence and perjury; material misstatements; reasonable doubt denigration; and emotionally inflammatory argument and evidence.

II. Where appointed counsel abandoned Petitioner at a critical stage of the proceedings; failed to perform investigation of any kind; refused to seek a continuance; forced Petitioner to waive his rights to testify and present an exonerating witness; refused to present a substantial defense; acquiesced with prosecutorial misconduct; failed to oppose inadmissible evidence; and accepted the presence of biased jurors, Petitioner was denied both a fundamentally fair trial and the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.

Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when

"a state court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Court notes that the Michigan Court of Appeals reviewed and rejected petitioner's prosecutorial misconduct claims under a plain error standard because he failed to preserve the issues as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. See *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th

Cir. 2017); *cert. den.* 138 S. Ct. 1998 (2018).[1]

## III. DISCUSSION

### A. Claim # 1.  The prosecutorial misconduct claims.

Petitioner first argues he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will provide a basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.

---

[1] Respondent urges this Court to deny these claims on the ground that they are procedurally defaulted because petitioner failed to object at trial.  Petitioner argues in his second claim that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

*Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on

a prosecutorial misconduct claim, a habeas petitioner must show that the state

court's rejection of his prosecutorial misconduct claim "was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Parker v. Matthews*,

567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Habeas petitioners must clear a "high bar" to prevail on a prosecutorial

misconduct claim. *Stewart v. Trierweiler,* 867 F.3d at 639.

Petitioner first claims that the prosecutor committed misconduct and

violated M.R.E. 404(b)'s prohibition on using prior bad acts when he repeatedly

brought up petitioner's alcohol use and drunk driving at trial. The Michigan

Court of Appeals rejected this claim:

> Defendant complains that on several occasions in opening statement and
> closing argument, the prosecutor referenced defendant's alcohol
> consumption. As plaintiff aptly notes, evidence at trial revealed that a
> great deal of alcohol was purchased with the stolen credit cards, alcohol
> was found in defendant and Plewa's home during the execution of a
> search warrant, defendant blamed his use of alcohol for the faultiness
> of his recollection regarding the time surrounding the offenses, and the
> desire to obtain alcohol was posited as a motive for the crimes. Given
> the evidence adduced at trial, the prosecutor's references to defendant's
> alcohol consumption were proper comments on the evidence and
> reasonable inferences arising from the evidence.

*People v. Mell*, 2014 WL 6852989, p. 17 (internal citation omitted).

In the present case, the Michigan Court of Appeals determined that the prosecutor's references to petitioner's alcohol use were relevant to the prosecutor's theory of the case. A prosecutor does not commit misconduct by bringing up a habeas petitioner's prior bad acts when such bad acts are relevant to the prosecutor's case. *See Cristini v. McKee,* 526 F. 3d 888, 900 (6th Cir. 2008).

Petitioner next contends that the prosecutor improperly commented on petitioner's post-*Miranda* silence when he made the following remarks in closing argument:

> Now, one very important thing. Mr. Kaluzny [defense counsel] began his closing argument with the assertion that the defendant is here saying he's not guilty. He is not. The defendant is not saying anything. And that is not evidence that he's not guilty. And it is not evidence that he is guilty.
>
> The fact that the defendant is on trial is not evidence of anything. He has not said anything to you. And as Mr. Kaluzny said, you may not use that against him and that is absolutely correct. But you also cannot give him things he doesn't deserve.
>
> He didn't say anything. And he doesn't deserve to have you say, oh, he's asserting that he's not guilty. He's not. He never said that. He has never said anything. And that can't be used against him. Of course, that's absolutely right. Except he did say in this, how much time am I looking at?

(Tr. 5/23/13, pp. 171–72).

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence after he has been given *Miranda* warnings to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). However, a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent, because as to the subject matter of the statements, defendant has not remained silent at all. *Anderson v. Charles,* 447 U.S. 404, 408 (1980). The prosecutor did not improperly comment on petitioner's post-*Miranda* silence because the prosecutor's reference was to a comment that petitioner had made prior to exercising his right to remain silent when he had asked the detective how much time that he was looking at for the crime. Petitioner only invoked his right to remain silent later in the interview. Because petitioner chose to speak with the police after his *Miranda* warnings had been given, the prosecutor's remarks about petitioner's inquiries into his possible sentence did not impermissibly comment upon petitioner's post-arrest silence.

Petitioner further contends that the prosecutor committed misconduct by introducing evidence that petitioner had requested during the police interview to speak with an attorney.

Although the *Doyle* rule was established in the context of a defendant's invocation of *Miranda's* right to remain silent, it also applies to an invocation of the right to counsel. *See Wainwright v. Greenfield*, 474 U.S. 284, 295, n. 13 (1986).

The parties had agreed to redact the portion of the detective's interview with petitioner, where petitioner had invoked his right to counsel. However, the detective while testifying about the interrogation mentioned that petitioner had asked to speak with an attorney. After the detective testified, the defense counsel indicated that this reference to petitioner's request for counsel should have been crossed off the interview sheet and that counsel himself may have been at fault for not doing so. The prosecutor agreed to redact the reference to petitioner's request for counsel from the interview sheet before it was given to the jury. *People v. Mell*, 2014 WL 6852989, pp. 5–6.

There is no indication that the failure to redact the police interview was anything other than inadvertent. Moreover, in light of the overwhelming evidence of guilt, the prosecutor's failure to redact the police interview to remove references to petitioner's invocation of his right to counsel was harmless error because it "had no substantial and injurious effect or influence in determining the jury's verdict." *United States v. Perkins*, 204 F. App'x. 799, 807 (11th Cir. 2006).

Petitioner next contends that the prosecutor violated his Sixth Amendment right to confrontation by admitting into evidence the out-of-court statement made by his co-defendant to the police. The Michigan Court of Appeals rejected this claim:

> Plewa's statement was not offered to prove the truth of the matter asserted, i.e., to prove that defendant robbed Graham, or for the purpose of establishing the truth of Plewa's statement during the interview. Rather, Plewa's statement was offered to provide context for the police interview, that is, to show what information was conveyed to defendant to prompt his responses, and to show defendant's reaction to Plewa's statement while giving his own statement. Plewa's statement provided context for understanding and evaluating defendant's answers. "[A] statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." Because the statement was used for the limited purpose of providing context for defendant's responses and not to prove the truth of the matter asserted, it did not constitute hearsay, or a statement of an absent declarant such that defendant's confrontation rights were violated.

*People v. Mell*, 2014 WL 6852989, p. 7 (internal citation omitted).

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-28 (1968).

The nonhearsay aspects of a co-defendant's confession, which are offered not to prove what happened at the scene of a crime, but what happened when the defendant confessed, raise no Confrontation Clause concerns. *Tennessee v. Street,* 471 U.S. 409, 414 (1985). Therefore, admission of a non-testifying witness' statements into evidence does not violate the Sixth Amendment right to confrontation where the evidence is not admitted for its truth, but rather, to show the context of a defendant's statements, confessions, or admissions. *See Cargill v. Turpin,* 120 F. 3d 1366, 1373-75 (11th Cir. 1997); *United States v. Davis,* 890 F. 2d 1373, 1380 (7th Cir. 1989). Stated differently, where a non-testifying co-defendant's statement is not admitted for its truth, but to shed light on the circumstances under which a defendant made his own confession to the police, it is not hearsay, and its admission does not violate a defendant's constitutional rights under the Confrontation Clause. *See e.g. United States v. Whittle*, 713 F. App'x. 457, 461-62 (6th Cir. 2017); *cert. den.* 138 S. Ct. 1580 (2018).

The Michigan Court of Appeals reasonably concluded that Ms. Plewa's out-of-court statement was not admitted to prove petitioner's guilt but only in the context of showing how he reacted to the police confronting him during the interrogation about Ms. Plewa's comments.

Petitioner next claims that the prosecutor committed several instances where he mischaracterized the evidence.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

Petitioner first claims that the prosecutor improperly characterized petitioner's statement to the police during the interrogation as being a de facto or implied confession, when the prosecutor pointed to the fact in both his opening and closing arguments that petitioner changed his story several times and then asked the detective "How much time am I looking at?" after being informed of the various charges.

The Michigan Court of Appeals rejected petitioner's claim:

Defendant argues that the prosecutor untruthfully argued at trial that

13

defendant had confessed. In opening statement, the prosecuted stated that defendant's comment during questioning by the police regarding how much time he was going to get equated to a confession. In closing argument, the prosecutor discussed defendant's changing stories during the interview, noting that he first fervently denied committing the robbery and, after the detective confronted him with certain evidence, defendant asked, "How much time am I looking at," and argued that defendant's statement showed consciousness of guilt. This argument was a proper comment on the evidence and reasonable inferences drawn therefrom and, therefore, was not plainly improper.

*People v. Mell*, 2014 WL 6852989, p. 18 (internal citation omitted).

This Court agrees that the prosecutor's remarks were based on reasonable inferences from the evidence and not a misstatement of the facts.

Petitioner next claims that the prosecutor misstated the evidence by arguing that Cox had seen the perpetrator when she had, in fact, testified at trial that she did not get a good look at the robber. The Michigan Court of Appeals rejected this claim:

Defendant also argues that although Cox testified at trial that she did not see the robber, the prosecutor erroneously argued in closing argument that she had seen the perpetrator. The record reveals, however, that the prosecutor argued that because Cox testified that she saw something yellow, it could be inferred that she may have noted the yellow on the back of defendant's sweatshirt or the yellow sticker on the back of Plewa's car. The prosecutor's remarks were supported by this testimony and reasonable inferences arising from it. To the extent that the prosecutor suggested that Cox saw Graham give the perpetrator her purse, defendant did not object, and the trial court's instruction that the lawyers' statements were not evidence was sufficient to dispel any possible prejudice and to protect defendant's substantial rights.

14

*People v. Mell*, 2014 WL 6852989, p. 18 (internal citations omitted).

The Michigan Court of Appeals' determination that the prosecutor's remarks were based on inferences from the evidence is reasonable, precluding relief. Any possible prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell,* 354 F.3d 482, 495 (6th Cir. 2003).

Petitioner next claims that the prosecutor permitted the victim to commit perjury, because her description of the suspect vehicle and license plate at trial were inconsistent with her statement to the police and was contradicted by other witnesses.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they

were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d at 517-18.

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner only points to inconsistencies between the victim's statements to the police and her trial testimony and the fact that other witnesses gave different descriptions of the suspect vehicle. This is patently insufficient to establish perjury.

Moreover, as the Michigan Court of Appeals indicated in rejecting petitioner's claim, *People v. Mell*, 2014 WL 6852989, p. 18, defense counsel was able to bring out the inconsistencies between the victim's trial testimony and her

prior statement concerning the color and make of the vehicle and the license plate

number, thus, petitioner failed to establish that he is entitled to a new trial on the

ground that the victim testified falsely on these issues. *See United States v. Ward,*

190 F.3d 483, 491 (6th Cir.1999)(rejecting claim that government witness

committed perjury where "the court gave the defendants several opportunities to

cross-examine and recross-examine the witnesses to bring any inconsistencies in

testimony to the attention of the jury.  We know of no rule that stands for the

proposition that, even with full cross-examination, the introduction of perjured

testimony per se warrants a new trial.").

Petitioner next contends that the prosecutor misstated the concept of

reasonable doubt by equating the concept to a jigsaw puzzle.  The Michigan Court

of Appeals rejected the claim in part by noting that trial court gave the jurors the

correct instruction on reasonable doubt and instructed the jury to follow the

court's instructions. *People v. Mell*, 2014 WL 6852989, p. 19.  Any possible

misconduct by the prosecutor in minimizing the concept of reasonable doubt was

cured by the fact that the jurors were given the correct instruction on reasonable

doubt. *See U.S. v. Henry,* 545 F. 3d 367, 384 (6th Cir. 2008).

Petitioner next contends that the prosecutor improperly attempted to garner

sympathy for the victim by asking her about her mental and emotional state after

the robbery. These questions, however, were relevant to establish that the victim had been placed in fear, an essential element of the robbery charge. This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 5/23/13, p. 176). *See Cockream v. Jones,* 382 F. App'x. 479, 486 (6th Cir. 2010).

Petitioner is not entitled to relief on his prosecutorial misconduct claims.

**B. Claim # 2. Ineffective assistance of counsel claims.**

Petitioner next argues he was denied the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that

such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the

19

*Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner first contends that his counsel was laboring under a conflict of interest because counsel was unprepared for trial, refused to permit petitioner or Ms. Plewa to testify, and threatened to withdraw as petitioner's attorney if petitioner insisted on taking the witness stand.

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692. The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Id.* The *Strickland* court further noted that there was one type of

ineffective assistance of counsel claim that warranted a "similar, though more limited, presumption of prejudice," namely, cases involving an actual conflict of interest that adversely affects counsel's performance. *Id.* This reference was to the Supreme Court's ruling in *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980), where the Supreme Court held that in order to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate that an actual conflict of interest exists that adversely affected his attorney's performance.

To demonstrate a Sixth Amendment violation where a trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known, a defendant must establish that a conflict of interest adversely affected counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 172-74 (2002). The Supreme Court based its decision in *Mickens* in part on the *Sullivan* case, which as noted above, involved a Sixth Amendment violation arising from the joint representation of multiple defendants by a single attorney. The case in *Mickens*, however, did not involve a conflict of interest based upon multiple representation, but rather, successive representation, where the defendant's attorney had previously represented the murder victim in a juvenile court proceeding. Although noting that the *Sullivan* rule had been applied

"unblinkingly" to various kinds of conflicts of interest that did not involve multiple representation, the Supreme Court noted that the language in *Sullivan* "does not clearly establish, or indeed even support, such expansive application." *Id.* at 175. The Supreme Court further noted that *Sullivan* and the Supreme Court's earlier case of *Holloway v. Arkansas*, 435 U.S. 475 (1978) "stressed the high probability of prejudice arising from multiple representation, and the difficulty of proving that prejudice." *Id.* However, the Supreme Court in *Mickens* noted that "[N]ot all attorney conflicts present comparable difficulties" and concluded that it remained an "open question" whether *Sullivan* should be extended to cases other than multiple representation. *Id.* at 176.

In the aftermath of *Mickens,* the Sixth Circuit has indicated a reluctance to apply the *Sullivan* rule to conflicts of interest that do not involve multiple representation. In *Smith v. Hofbauer,* 312 F.3d 809, 817 (6th Cir. 2002), the Sixth Circuit held that a habeas petitioner was not entitled to use *Sullivan's* lesser standard of proof for an ineffective assistance of counsel claim that arose from a conflict of interest other than multiple representation. Other cases have reached similar conclusions. *See McElrath v. Simpson,* 595 F.3d 624, 631, n. 7 (6th Cir. 2010)("The [Supreme] Court in *Mickens* clarified that, for purposes of review under AEDPA, its clearly established precedent has not applied the *Sullivan*

standard outside the context of a counsel's concurrent representation of more than

one defendant"); *Harrison v. Motley,* 478 F.3d 750, 756, 57 (6th Cir.

2007)(neither *Sullivan* nor *Holloway* applied to the petitioner's claim that his

lawyers had a conflict of interest in representing him based on their fears of

criminal prosecution and malpractice for witness tampering); *Stewart v.*

*Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006)("This Court has consistently

held that, for Section 2254 cases, the *Sullivan* standard does not apply to claims of

conflict of interest other than multiple concurrent representation; in such cases,

including successive representation, the *Strickland* standard applies."); *Whiting v.*

*Burt,* 395 F.3d 602, 619 (6th Cir. 2005)(presumed prejudice standard is

inapplicable to an attorney's alleged conflict from representing the petitioner at

trial and on appeal); *United States v. Moss,* 323 F.3d 445, 473, n. 25 (6th Cir.

2003)("As we have discussed, *supra,* the *Mickens* rationale compels our strong

hesitation to apply *Sullivan* to conflicts of interest cases arising outside of the joint

representation context").  In this case, expanding the presumed prejudice standard

of *Cuyler v. Sullivan* "beyond its present borders of multiple concurrent

representation would result in the creation of a new rule of law--one that clearly

has not been dictated by prior Supreme Court precedent." *Whiting,* 395 F.3d at

619-20.

In the present case, the petitioner's alleged conflict of interest does not result from multiple concurrent representation of joint defendants at the same trial. The presumed prejudice standard enunciated in *Cuyler v. Sullivan* is inapplicable to petitioner's ineffective assistance of trial counsel claim. Instead, the proper standard would be the *Strickland* standard, in which the petitioner would have to demonstrate that he was actually prejudiced by counsel's alleged conflict of interest.

Petitioner first contends that trial counsel "abandoned" him in the month-and-a-half before trial by not visiting him, and that counsel performed an inadequate pretrial investigation.

Petitioner's claim is refuted by the record. The Michigan Court of Appeals rejected petitioner's claim:

> The record does not support defendant's assertion that defense counsel was unprepared to try the case. First, defendant has not established factual support for his claim that defense counsel "abandoned" him for two months before trial and was therefore unprepared. To the contrary, defense counsel's petition for attorney fees indicates that he visited defendant at least five times before trial. Defendant even asserts in his Standard 4 brief [2] that "on Thursday morning, counsel came to see the

---

[2] Petitioner filed his own *pro se* appellate brief in addition to the one filed by appellate counsel. Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

defendant prior to the start of trial...."  In addition, defendant does not indicate what valuable information or defense might have been generated had counsel made any additional visits.  Defendant argues that defense counsel was not adequately familiar with the discovery packet provided by the prosecution and requested additional discovery.  Defendant has not demonstrated, however, what additional "broad discovery" defense counsel could have obtained and presented at trial that would have favorably altered the case.  Although defendant claims that counsel should have introduced a diagram showing his home, the restaurant, and a gas station, the prosecution introduced three overviews of the area and defendant has not demonstrated that any additional illustration of the area was necessary or would have been helpful.  He also has not persuasively argued what would have been different had he, himself, examined the exhibits before counsel stipulated to their admission.

The record also belies defendant's argument that defense counsel's unpreparedness is evident from his failure to offer a substantial defense or a "defense theory whatsoever."  The record demonstrates that defense counsel's strategy was to concede defendant's guilt of the financial transaction device offenses, but deny his culpability for armed robbery.  Defense counsel clearly and vigorously presented a defense of misidentification and also challenged the adequacy of the police investigation.  Defense counsel challenged the discrepancies in Graham's and eyewitness Laura Cox's accounts, and argued that the perpetrators were the occupants of a black vehicle who the police had originally investigated.  Counsel suggested that the police rushed to judgment because of defendant's involvement in the credit card offenses, and argued that there was reasonable doubt regarding defendant's involvement in armed robbery.

Defendant does not indicate what additional rational argument defense counsel could have made.  To the extent that defendant relies on the fact that defense counsel's defense was not successful, nothing in the record suggests that defense counsel's presentation of the defense was unreasonable or prejudicial.  Again, counsel's decisions about how to argue the evidence are matters of trial strategy, and "this Court will not

second-guess defense counsel's judgment on matters of trial strategy."
"The fact that defense counsel's strategy may not have worked does not
constitute ineffective assistance of counsel."

*People v. Mell*, 2014 WL 6852989, pp. 9–10 (internal citations omitted).

Petitioner argues that counsel's failure to visit with petitioner in private in
the county jail in the last month and a half prior to trial amounted to a *per se*
denial of the effective assistance of counsel.  The case of *Mitchell v. Mason*, 325
F.3d 732 (6th Cir. 2003), upon which petitioner relies, does not support
petitioner's position.  In *Mitchell*, the Sixth Circuit held that the Supreme Court's
holding in *United States v. Cronic,* 466 U.S. 648, 659 (1984) required a
presumption of prejudice be applied to the petitioner's ineffective assistance
claims.  The Sixth Circuit's conclusion was based on the fact that during the entire
course of defense counsel's seven month representation, he met with the petitioner
for only six minutes immediately prior to trial, as well as the fact that in the month
prior to trial counsel had been suspended from the practice of law, and therefore
did not appear at motion hearings or do any other work on the case. *See Id.* at
742-44.

Petitioner's case is distinguishable from the petitioner's circumstances in
*Mitchell.*  Unlike in *Mitchell*, petitioner's counsel was not suspended from the
practice of law at any point during his representation of petitioner.  Petitioner does

not allege that counsel failed to meet with him at all, only that counsel failed to meet with him privately at the jail in the month and a half prior to trial. Petitioner concedes that counsel did meet with him five times at the county jail and his allegation that counsel failed to meet with him in the month and a half prior to trial is contradicted by petitioner's own admission in his Standard 4 brief that counsel met with him in the jail the Thursday prior to trial. Finally, counsel provided a vigorous defense for petitioner at the preliminary examination and at trial. The Sixth Circuit in *Mitchell* itself distinguished that case from the circumstances present in petitioner's case, observing that if the issue had been only the failure of counsel to meet with petitioner and to prepare in the thirty-day period prior to trial, "it might have been proper to apply the *Strickland* analysis, for as *Bell* notes, counsel's failure in particular instances is evaluated under *Strickland*." *Mitchell*, 325 F.3d at 742.

The *Mitchell* court also distinguished the Sixth Circuit's prior decision in *Dick v. Scroggy*, 882 F.2d 192 (6th Cir.1989). *See Mitchell*, 352 F. 3d at 744. In *Dick*, the Sixth Circuit applied the *Strickland* test to a claim based on defense counsel's failure to consult with the habeas petitioner at all except for a 30-45 minute meeting the day before trial. *See Dick*, 882 F.2d at 197. "In short, *Mitchell* is a case involving unique facts-a complete failure to consult combined with

counsel's suspension from the practice of law immediately prior to trial-and its holding is cabined by those unique facts." *See Willis v. Lafler,* No. 05-74885, 2007 WL 3121542, p. 29 (E.D. Mich. Oct. 24, 2007)(citing *Johnson v. Bradshaw*, 205 F. App'x. 426, 432-33 (6th Cir. 2007)).

The Sixth Circuit, in fact, has applied the *Strickland* standard in evaluating and rejecting an ineffective assistance of counsel claim based upon counsel's failure to consult with a habeas petitioner. *See Bowling v. Parker,* 344 F. 3d at 506 (trial attorneys' alleged failure to consult with defendant did not prejudice defendant in capital murder case, and thus could not amount to ineffective assistance, although attorneys allegedly met with defendant for less than one hour in preparing defense, where defendant failed to show how additional consultation with his attorneys could have altered outcome of trial). Accordingly, petitioner's ineffective assistance of counsel claim is subject to the *Strickland* standard and he would be required to show actual prejudice in order to obtain habeas relief.

Petitioner is not entitled to relief on his claim because he failed to show how he was prejudiced by counsel's alleged failure to visit him more frequently in jail.

Petitioner also does not indicate what additional information should have been elicited by defense counsel at trial. A habeas petitioner cannot show

28

deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his or her defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002). Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct a minimal investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F.3d 594, 607-08 (6th Cir. 2002).

As a related claim, petitioner contends that trial counsel was ineffective for failing to request a continuance so he could have additional time to prepare for trial. The Michigan Court of Appeals rejected this claim:

> Here, defense counsel never expressed that he was unprepared to start trial, and defendant has not demonstrated any valuable evidence or substantial defense that was lost because of counsel's alleged unpreparedness. Because defendant has not established that good cause for an adjournment existed, or that he was actually prejudiced by the lack of an adjournment, defendant cannot establish that defense counsel acted unreasonably in not making that futile request.

*People v. Mell*, 2014 WL 6852989, p. 14.

Petitioner was not prejudiced by his trial counsel's failure to request a continuance absent any showing that trial counsel was unprepared or how

29

additional preparation time would have aided petitioner's case. *See Bacon v. Klee*,

No. 15-2491, 2016 WL 7009108, p. 5 (6th Cir. Nov. 30, 2016).

Petitioner further argues that trial counsel was ineffective for failing to present evidence to show that two other persons driving a black Jeep were the actual armed robbery suspects. The Michigan Court of Appeals rejected this claim:

> Defendant has also failed to demonstrate that defense counsel was ineffective for failing to request the appointment of an investigator to obtain further information about the occupants of a black Jeep who were initially investigated as possible suspects. A court-appointed investigator is not "automatically mandatory but rather depends upon the need as revealed by the facts and circumstances of each case." The trial court has discretion to determine whether an indigent defendant has demonstrated that an investigator is necessary to ensure due process, and a defendant's reasons cannot rest on "pure conjecture." Defendant does not specify what helpful or valuable information needed to be obtained by an investigator. Police witnesses testified at trial, explaining that they initially investigated a male and a female who were in a black Jeep, why they first investigated those persons, and why they ultimately ruled them out as suspects. Defense counsel discussed the initial suspects in closing argument, including that the male's appearance was consistent with defendant's appearance. Defendant's reasons for now arguing that an investigator was needed are based on pure conjecture. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."

*People v. Mell*, 2014 WL 6852989, p. 11 (internal citations omitted).

Petitioner would not be entitled to relief on his claim that counsel was ineffective for failing to present evidence in support of a third-party suspect

30

defense because such evidence would have been cumulative of evidence that had already been introduced to suggest that other suspects committed the armed robbery. Petitioner was not prejudiced by counsel's failure to present additional evidence because it would have been cumulative of other evidence and witnesses presented at trial in support of petitioner's claim that two other persons in a black Jeep committed the actual armed robbery. *Wong,* 558 U.S. at 22-23. The jury was "well acquainted" with evidence that would have supported petitioner's claim that other suspects were culpable for the actual robbery, thus, additional evidence in support of petitioner's defense "would have offered an insignificant benefit, if any at all." *Id.* at 23.

Petitioner next contends that counsel was ineffective for failing to call a fingerprint expert concerning the lack of fingerprints recovered from the victim's purse.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006). Petitioner offered no evidence to this Court that he had a fingerprint expert ready to offer favorable testimony for petitioner. Moreover, as the Michigan Court of Appeals noted in rejecting petitioner's claim, counsel elicited an admission from the detective in charge of the case that the

police failed to fingerprint the purse. *People v. Mell*, 2014 WL 6852989, p. 11. Counsel's failure to obtain an expert to challenge fingerprint evidence was not ineffective assistance of counsel, because counsel adequately challenged such evidence through the cross-examination of prosecution witnesses. *See Franklin v. Anderson*, 267 F. Supp. 2d 768, 780 (S.D. Ohio 2003).

Petitioner next contends that trial counsel's cross-examination of the victim at the preliminary examination was ineffective because he did not adequately probe the victim about problems with her description of the suspect vehicle.

Although other attorneys might have reached a different conclusion about the value of cross-examining the victim in greater detail, counsel's strategic choice not to cross-examine her in greater detail was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F.3d 851, 864 (6th Cir. 2002)(quoting *Strickland,* 466 U.S. at 689). Moreover, "eschewing cross-examination at the preliminary examination stage is a reasonable strategy. Extensive questioning would tip the prosecution to the weaknesses in its case, but not likely prevent the defendant from being prosecuted because the state need only show probable cause [to obtain a bindover to circuit court]." *Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007).

Petitioner next contends that his trial counsel was ineffective for refusing to

let petitioner testify.  The Michigan Court of Appeals rejected the claim:

> There are no grounds to conclude that counsel's performance deprived defendant of his constitutional right to testify.  There is no record evidence that defense counsel threatened to withdraw from the case if defendant testified.  The record shows that, after the prosecution rested, defense counsel stated on the record that he and defendant had discussed whether defendant was going to testify and defendant agreed that he would not testify.  Defendant was advised of his right to testify or not testify, and defense counsel explained on the record that the decision whether to testify is defendant's and "no one else's."  Defendant stated that he understood that the decision was his, and that he was not forced or threatened in any way in making his decision not to testify.  Defendant never expressed disagreement with counsel's statement that he did not wish to testify, did not claim that he was ignorant of his right to testify, or that defense counsel had coerced him into not testifying.  The decision whether to call defendant as a witness was a matter of trial strategy and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy.

*People v. Mell*, 2014 WL 6852989, p. 12.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).  A federal court sitting in habeas review of a state court conviction should have "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009)(internal citation omitted).  To overcome this presumption, a habeas petitioner must present record evidence that he alerted the trial court to his desire

to testify. *Id.* Because the record is void of any indication by petitioner disagreed with counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F.3d at 357.

More importantly, petitioner failed to show that he was prejudiced by counsel's advice concerning whether he should testify or not. Petitioner merely stated that he would have testified that he had nothing to do with the armed robbery, without providing any details of his proposed testimony, which is insufficient to establish prejudice based upon counsel's allegedly deficient advice concerning whether he should testify or not. *Hodge,* 579 F.3d at 641 (defendant did not demonstrate prejudice required to establish claim of ineffective assistance of counsel based upon defense counsel's alleged impairment of his right to testify at capital murder trial where defendant did not provide details about substance of his testimony and merely speculated that his testimony would have had impact on jury's view of certain witnesses' credibility and of his involvement in murders).

Petitioner further claims that trial counsel was ineffective for failing to call his co-defendant Ms. Plewa to testify that petitioner had nothing to do with the armed robbery. The Michigan Court of Appeals rejected the claim:

Defendant further argues that Plewa's testimony would have exonerated him of the armed robbery charge. In an affidavit, Plewa averred that neither she nor defendant committed armed robbery, they found Graham's red purse on the side of the road, and they used the credit cards that were inside the purse. She further averred that she would have testified at defendant's trial, but defense counsel stated that "he did not believe [her] and would not allow [her] to commit perjury." At trial, defense counsel placed on the record that "it's a group decision, with my client's final decision, that we are not going to call [Plewa] as a witness." Defendant acknowledged that he agreed with the strategy to not call Plewa as a witness, that he "underst[oo]d all of the ramifications why [he] made that decision," and that "it's ultimately [his] decision." Thus, the record shows that defendant chose to follow defense counsel's advice to not call Plewa as a witness at trial. Further, a defense attorney is not ineffective for failing to call a witness whom he believes is going to commit perjury.

*People v. Mell*, 2014 WL 6852989, p. 11 (internal citation and footnote omitted).

Counsel' decision not to call the co-defendant because he believed she would commit perjury is a strategic decision that defeats petitioner's ineffective assistance of counsel claim. *See Davis v. Lafler*, 658 F.3d 525, 537-38 (6th Cir. 2011).

Petitioner next claims that counsel was ineffective for failing to move to suppress three items of evidence.

Petitioner first contends that counsel should have moved to suppress the BB and simulated guns recovered from petitioner's house because they were not relevant to the case. The Michigan Court of Appeals, however, ruled that this

evidence was relevant and admissible under Michigan law. *People v. Mell*, 2014 WL 6852989, p. 12. The failure to object to relevant and admissible evidence in not ineffective assistance of counsel. *See Alder v. Burt,* 240 F. Supp. 2d 651, 673 (E.D. Mich. 2003).

Petitioner next claims that counsel should have moved to suppress any mention of any yellow sticker on the back of Plewa's vehicle because the sticker fell off while the vehicle was being towed to the police station. The Michigan Court of Appeals rejected the claim, because petitioner failed to show that the evidence was exculpatory or that the police acted in bad faith in failing to preserve it. *People v. Mell*, 2014 WL 6852989, p. 13.

Petitioner has failed to show that the yellow sticker that fell from Ms. Plewa's vehicle was exculpatory or that the police acted in bad faith in failing to preserve it, thus, counsel was not ineffective for failing to move to suppress references to the sticker on this basis. *See Monzo v. Edwards,* 281 F.3d 568, 580 (6th Cir. 2002).

Petitioner next contends that trial counsel was ineffective for failing to move to challenge the legality of the search warrant used to search petitioner's home and recover the various items from it.

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

As the Michigan Court of Appeals noted in rejecting petitioner's claim, petitioner failed to show that the search warrant was based on false or invalid information. *People v. Mell*, 2014 WL 6852989, p. 13. Petitioner has provided no basis for this Court to find that the search warrant was invalid or that the evidence obtained as a result of the warrant would have been suppressed.

Petitioner next claims that trial counsel was ineffective for failing to move to suppress the victim's in-court identification. The Michigan Court of Appeals rejected the claim:

> To the extent that there was an identification, the relief that defendant requests is appropriate only when an identification is the product of an unduly suggestive pretrial identification procedure. Here, there was no pretrial identification procedure. Rather, Graham's identification testimony was based on her account of the offense. Although defendant contends that there are reasons to question the reliability of Graham's identification, defendant was not prevented from exploring this issue at trial, and defense counsel did so. It was up to the jury to determine whether Graham's identification was reliable and credible in light of the

factors identified by defendant. Accordingly, a motion to suppress Graham's identification testimony would have been futile.

*People v. Mell*, 2014 WL 6852989, p. 14 (internal citations omitted).

As an initial matter, the victim never positively identified petitioner as her assailant at trial but only testified that the robber's characteristics were similar to petitioner's general appearance.

To the extent this was an identification, petitioner has failed to show that the victim was subjected to any suggestive pre-trial identification procedure, thus counsel was not ineffective for failing to move for suppression of the victim's trial identification testimony. *See Perkins v. McKee,* 411 F. App'x. 822, 833 (6th Cir. 2011). Secondly, the decision to attack the credibility of the victim's identification testimony, such as it were, through cross-examination was a reasonable trial strategy that defeats petitioner's ineffective assistance of trial counsel claim. *See Scott v. Elo,* 100 F. App'x. 332, 333-34 (6th Cir. 2004).

Petitioner next contends that counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in his first claim.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments,

there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). The prosecutor's questions, comments, and arguments did not deprive petitioner of a fundamentally fair trial. Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle v. Bagley ,* 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner next contends that trial counsel was ineffective during *voir dire* because he kept several jurors who were crime victims on the jury.

One of the most essential responsibilities of a defense attorney is "to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to ferret out jurors who are biased against the defense." *Miller v. Francis,* 269 F.3d 609, 615 (6th Cir. 2001). However, a defense counsel's actions during *voir dire* are presumed to be matters of trial strategy and cannot serve as the basis of an ineffective assistance of counsel claim unless "counsel's decision is shown to be so ill-chosen that it permeates the entire trial with unfairness". *Id.* at 615-16. To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F.3d 453, 458 (6th Cir. 2001); *See also Miller v. Francis,* 269 F.3d at 616 (when a claim of ineffective assistance of counsel is founded on a claim that counsel failed to strike

a biased juror, the defendant must show that the juror was actually biased against him).

In the present case, the jurors indicated that they could be fair and impartial. In light of the fact that all of the jurors who had been crime victims indicated that they could be fair and impartial, counsel was not ineffective for failing to challenge these jurors for cause. See *Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 861 (E.D. Mich. 2009)(Defense counsel was not ineffective in failing to challenge for cause two jurors who either were prior victims of crimes or who had family members who were prior victims of crimes, where each juror indicated that they could serve on the jury and be impartial, and there was no apparent reason to disbelieve the jurors' affirmations).

Petitioner next contends that trial counsel was ineffective in closing argument, in that he made several harmful comments and acted like a second prosecutor. The Michigan Court of Appeals rejected this claim:

> Although defense counsel stated that the prosecutor was fair and told the jurors facts as he believed them, counsel followed those remarks by presenting several misstatements that counsel believed the prosecutor had made, and counsel told the jurors to review the evidence to support their conclusions. Defendant notes that counsel argued that it was easy to say that defendant was guilty of armed robbery because he used the credit cards, but defendant fails to note that counsel then argued that such a conclusion would overlook the evidence that was actually introduced at trial. While defense counsel made comments about

Graham's state of mind, i.e., that she was upset and hysterical, they were not made to evoke sympathy for Graham, but to support the argument that her agitated state of mind negatively affected her observations during the offenses, which caused mistakes in her recounting what occurred and influenced her testimony at trial. Defense counsel's comments about the "expert" police detective not being able to obtain fingerprints from Graham's purse was part of his argument that there was reasonable doubt concerning defendant's guilt because of the less than adequate police investigation. Regarding defendant's claim that counsel unduly emphasized that the defense did not call any witnesses, counsel's argument was clearly intended to stress that the case should not be decided based on which side presented more witnesses or evidence, and that the burden of proof was on the prosecution. In closing argument, defense counsel summarized the testimony and argued that defendant's identification as the robber was not established beyond a reasonable doubt. The record does not establish that defense counsel's performance fell below an objective standard of reasonableness.

*People v. Mell*, 2014 WL 6852989, p. 16.

While the right to effective assistance of counsel extends to closing arguments, counsel nonetheless has wide latitude in deciding how best to represent a criminal defendant, and deference to a defense counsel's decisions in his closing argument is particularly important because of the broad range of legitimate defense strategies at that stage. *Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003). Judicial review of a defense attorney's summation must therefore be highly deferential and is "doubly deferential when it is conducted through the lens of federal habeas." *Id.* By candidly acknowledging a client's shortcomings,

a defense attorney may be able to build credibility with a jury and persuade it to focus on the relevant issues in the case. *Yarborough,* 540 U.S. at 9.

In the present case, the Michigan Court of Appeals reasonably concluded that defense counsel's closing argument was neither deficient nor prejudicial.

Petitioner lastly contends that trial counsel was ineffective for failing to request an earlier version of the reasonable doubt instruction. The reasonable doubt instruction as given was the standard instruction for reasonable doubt, CJI 2d 3.2. *People v. Mell*, 2014 WL 6852989, p. 16. Because the judge gave the jury the correct instruction on reasonable doubt, the Michigan Court of Appeals' conclusion that defense counsel was not ineffective in failing to request an additional instruction on reasonable doubt was not objectively unreasonable. *See Moore v. Steward*, 948 F. Supp. 2d 826, 852 (W.D. Tenn. 2013).

Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

**C. The motion for an evidentiary hearing is denied.**

Petitioner filed a motion for an evidentiary hearing.

A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001). Petitioner is not entitled to an evidentiary hearing because his claims are meritless.

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court also denies petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,*

156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**IV. CONCLUSION**

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court **DENIES** the motion for an evidentiary hearing. (Dkt. # 8). The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 17, 2019